Egbert E. Noonan, J.
This is a motion by the third-party defendant, hereinafter called Gordon, to dismiss the amended complaint of the defendant and third-party plaintiff, hereinafter called the Eailroad, pursuant to subdivision 4 of rule 106 of the Buies of Civil Practice. A similar motion, addressed to the original third-party complaint, resulted in an order dismissing that complaint, with leave to the Eailroad to serve an amended complaint. The Eailroad elected to amend, and it is the third-party complaint, as amended, which is under attack in this motion.
The original action is one brought by the plaintiff, an employee of Gordon, against the Eailroad for injuries claimed to have been received when the plaintiff fell on February 23, 1959, while washing windows on the property of the Eailroad. Certain facts are conceded:
1. That the Eailroad and Gordon had a contract providing that Gordon was to wash windows on premises owned by the Eailroad, including “ tower 48 ”, where the accident is alleged to have occurred.
2. That the Eailroad was the owner of the premises where the alleged accident occurred.
3. That the building where the alleged accident happened was a public building, as defined in the Labor Law of the State of New York.
*359 4. That no anchors or lugs were installed and maintained on the windows of the building, where the alleged accident occurred.
The plaintiff’s complaint against the Railroad sounds in negligence and in essence alleges violation of the Labor Law. It does not specifically set forth the section, but obviously alleges a violation of section 202 of that law. In paragraph 7 it alleges that the Railroad failed to furnish the plaintiff a safe place to work, which may suggest a common-law violation or a violation of section 200 of the Labor Law. It is more likely, however, that this allegation is simply a further claim that the Railroad violated section 202. In any event, under common law, as well as under section 200, the same duty is placed upon the owner of premises and upon an employer to furnish a safe place to work. Thus, a violation of this duty by both the owner and the employer would make them joint tort-feasors and, if it is the claim of the plaintiff, under common law or section 200 of the Labor Law, that he was not furnished a safe place to work, the Railroad would not be entitled to a claim-over against Gordon as to that claim. (Treadwell Co. v. United States Fid. & Guar. Co., 158 Misc. 939, affd. 249 App. Div. 809, revd. on other grounds 275 N. Y. 158.)
The Railroad’s amended answer to the plaintiff’s complaint denies the allegations of negligence alleged by the plaintiff except that it admits that no anchors or lugs were installed and maintained on the windows in the buildings where this accident is alleged to have occurred. The amended answer also contains two so-called complete defenses — the first, alleging that the accident was caused solely by the negligence of the plaintiff himself, and the second, alleging that the accident was caused solely by the negligence of Gordon.
The portion of section 202 of the Labor Law which fixes the duties of the Railroad and Gordon reads as follows: “ The owner * * * of every public building where the windows are cleaned from the outside shall install and maintain anchors on all windows of such buildings or provide other safe means for the cleaning of the windows of such building as may be required and approved by the board of standards and appeals. The owner * * * shall not require, permit, suffer or allow any window in such building to be cleaned unless such anchors or other means are provided. * * * Every employer or contractor shall require his employee, while engaged in cleaning any window of a public building, to use the equipment and safety devices required by this chapter and rules of the board of standards and appeals.”
*360 This section places different duties on the Bailroad, owner, and on Gordon, the employer. The owner is required to provide safe means. The employer is required to see that the safe means provided are used by his employees.
The amended third-party complaint, in paragraphs 8 and 9, alleges in substance that Gordon contracted with the Bailroad, since no lugs or anchors were installed and maintained by the Bailroad, to wash the windows from the ground or by use of ladders, which would comply with the Labor Law and the rules and regulations promulgated pursuant to that law; that Gordon agreed to provide ladders, which were safe means under the Labor Law and the rules and regulations so promulgated. In essence, these allegations were contained in the original third-party complaint. The Bailroad further alleges as new material that ladders, which were safe means and complied with the Labor Law and the rules and regulations promulgated thereunder, were in fact provided by Gordon and that such ladders were provided on the day of the accident, and that the plaintiff and other employees of Gordon had such ladders with them on that day, and the amended third-party complaint further alleges, in substance, that the plaintiff was not using these ladders when the claimed accident occurred, and that, it was the duty of Gordon to require him to use such equipment, and that Gordon was negligent in failing to supervise the plaintiff properly and in neglecting to actually require the plaintiff to use the safe means provided.
Thus, the Bailroad urges that Gordon’s breach of duty in failing to require the plaintiff to use the safe means provided is primary active negligence and that the negligence of the Bail-road is passive and secondary and arises out of its ownership of the premises. To support its position, the Bailroad relies entirely upon the cases of Burris v. American Chicle Co. (120 F. 2d 218) and Kozman v. Trans World Airlines (236 F. 2d 527). In the Burris case, the plaintiff recovered in the trial court against the owner of the premises because scaffolding and ropes, furnished by the employer, which constituted safe means under the Labor Law and the rules and regulations, were defective. Thus, the court said (pp. 221-222): “ There can be no doubt of the sufficiency of the evidence to show that one of the supports of this scaffold, the rope which broke, was not of ample strength to support the scaffold safely when in use and the jury was but following the evidence in finding a violation of the statute and rules made in accordance therewith. That being so the liability of defendant American Chicle Company is clear
*361 In the Kozman case, the plaintiff recovered in the trial court against the owner, where a ladder for washing windows, which was furnished to the plaintiff by his employer, was caused to fall by the propeller wash from a four-motor airliner. There was no convincing proof in this case that the ladder did not comply with the statute and rules or that it was defective. Thus, the court said (p. 533): “ TWA’s liability under this statute is predicated upon its failure to require that adequate equipment be provided to Kozman to permit him to clean the windows safely under the existing circumstances ”. And again on the same page, the court said: “ Still, although the ladder may not have been defective, it did fall when exposed to the force of the propeller wash. The jury could have found that the ladder, although in good condition, was inadequate, in the circumstances here present, to provide a safe method for the cleaning of the hangar windows ”. (Emphasis supplied.)
It is obvious that the basis of sustaining the verdicts in favor of Burris and Kozman against each of the owners was that the means furnished was not safe because defective or not safe because inadequate. The claim-over by the owner in each of those cases was sustained because the unsafe and inadequate means were actually furnished by the employer. In each instance, the breach of statutory duty of the owner was passive and secondary and the breach of duty of the employer was active and primary. The claim of the Railroad, in its amended third-party complaint, does not fall within the principle of either case. Here the Railroad alleges total and complete compliance with the Labor Law and the rules and regulations promulgated thereunder by saying that the safe means required by that statute and those rules were actually furnished. There is no allegation that the means furnished by Gordon were either defective or inadequate. Indeed, the Railroad consistently, in its amended answer to the plaintiff’s complaint and in its amended third-party complaint, disavows any negligence on its part, since it claims that it fully complied with the duty imposed upon it by the Labor Law.
Considering the plaintiff’s claim against the Railroad, which we must in a motion of this type, he may only succeed if he establishes that no safe means were provided, as required by law. The Railroad’s amended third-party complaint claims that such safe means were provided. If the Railroad’s position is sustained on trial, the plaintiff cannot recover against it. If the plaintiff’s theory is sustained on trial, it can only be on the basis that the safe means, required by the statute, were not provided by the Railroad. Obviously, if the Railroad breached *362 this statutory duty and did not furnish the safe means required, the duty of Gordon to require the use of the safe means never came into being. The position of the Railroad, in its amended answer and amended third-party complaint, is simply that it is not liable to the plaintiff. It is well established that no claim-over may be had under such circumstances.
On the oral argument of the motion attacking the original third-party complaint, it was conceded that there is no written indemnity agreement upon which the Railroad relies, which expresses in clear and unequivocal language that Gordon would indemnify the Railroad even for the negligent conduct of the agents, servants or employees of the Railroad. Thus, indemnity is not available to the Railroad under this theory.
The motion to dismiss the amended third-party complaint is therefore granted, with costs. Submit order accordingly.